CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUL 0 1 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

AMANDA D. DENNISON,                    )
                                       )
        Plaintiff,                     )       Civil Action No. 5:10-cv-109
                                       )
v.                                     )       **MEMORANDUM OPINION**
                                       )
MICHAEL J. ASTRUE, Commissioner of     )       By: Hon. Glen E. Conrad
Social Security,                       )       Chief United States District Judge
                                       )
        Defendant.                     )

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 400 (1971).

The plaintiff, Amanda D. Dennison, was born on March 13, 1982, and has completed the seventh grade. She has previously worked as a deli/bakery worker, a gas station cashier, an office cleaner, a poultry plant worker, and a retail cashier. The Administrative Law Judge found that plaintiff worked on a substantial gainful basis throughout 2008 but has not done so since January

1, 2009. On February 25, 2008, plaintiff filed applications for disability insurance benefits and for supplemental security income benefits. In filing her claims, plaintiff alleged that she became disabled for all forms of substantial gainful employment on January 1, 2008. She now maintains that she has remained disabled to the present time. As to her application for disability insurance benefits, the record reveals that Dennison met the insured status requirements of the Act through September 30, 2010 but not thereafter. See gen., 42 U.S.C. §§ 416(i) and 423(a).

Dennison's claims were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated December 18, 2009, the Law Judge also determined that plaintiff is not entitled to disability insurance benefits or supplemental security income benefits. The Law Judge found that Dennison possesses the following severe impairments within the meaning of 20 C.F.R. §§ 404.1520(a) and 416.920(a): hip dysplasia affecting her left hip, degenerative disc disease ("DDD") of the cervical and lumbar spine, fibromyalgia, obesity, a bipolar affective disorder, an anxiety disorder with social phobia, and a post-traumatic stress disorder ("PTSD"). (TR 15.) The Law Judge also found that Dennison possesses a residual functional capacity ("RFC") to perform a limited range of light work, including the ability to lift ten pounds frequently, to stand or sit approximately six hours in an eight hour work day, and to occasionally use stairs and ladders or balance, stoop, and crouch. The Law Judge found that Dennison has mental limitations of function in that she is unable to consistently perform complex or challenging work activities without additional supervision, but is able to timely perform relatively simple and repetitive work activities, can maintain reliable attendance, can deal appropriately with coworkers and the public on a consistent basis, is able to complete a normal workweek without interruptions from her

mood disorder and anxiety symptoms, and can generally manage the usual stressors of competitive work. (TR 16-17.)

The Law Judge explained his RFC determination by exhaustively recounting the record evidence and indicating that he gave "great weight" both to the May 1, 2008 assessment of Dennison's physical RFC that was performed by a state agency physician and to the mental assessment performed by Dr. Leen, the consultative examining psychologist, because the Law Judge deemed these reports consistent with the claimant's ongoing activities. (TR 30.) The assessments of Dennison's social worker and her treating physician, Dr. Perry, on the other hand, were given "little weight" because "those assessments are inconsistent with the fact that the claimant is working three days per week as a cashier at a 7-11 convenience store, 6 hours one day and 8 hours on each of the subsequent days and working extra days on occasion to cover for absent employees." (TR 30.) The Law Judge consequently found that Dennison is able to perform her past relevant work as a cashier in a convenience store. (TR 31.) In an alternative finding, the Law Judge relied on testimony from the Vocational Expert (the "VE") to find that Dennison can perform jobs such as order clerk or charge account clerk even with an RFC requiring that she stand for only two hours per work day. (TR 32.) Accordingly, the Law Judge concluded that Dennison is not entitled to benefits under either federal program. See, gen., 20 C.F.R. §§ 404.1520(g) and 416.920(g).

Dennison appealed the denial of her claims for disability insurance benefits and supplemental security income benefits to the Social Security Administration's Appeals Council. However, the Appeals Council eventually adopted the Law Judge's opinion as the final decision of the Commissioner. Having exhausted all available administrative remedies, Dennison has now

3

appealed the denial of her claims to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that, while the evidence is in conflict, the Commissioner's denial of plaintiff's applications for disability insurance benefits and supplemental security income is supported by substantial evidence. See 42 U.S.C. § 405(g); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Much of Dennison's argument to the contrary revolves around her dismay with the Law Judge's decision to give little weight to the opinions tendered by her treating physicians—Drs. Lightner and Perry—and to instead substantially rely on the opinions of Dr. Leen and the state agency physicians. Of course, Dennison is correct that the so-called "treating physician rule" generally requires a court to accord greater weight to the testimony of a treating physician. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Nevertheless, a Law Judge holds the discretion to give less weight to the testimony of a treating physician if there is persuasive contrary evidence. Id. In other words, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other

4

substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)). As the Fourth Circuit has expressly held, a Law Judge may give little weight to a treating physician's conclusory opinions where the physician's own medical notes and the claimant's daily activities are inconsistent with his medical opinion. Craig, 76 F.3d at 590. See also 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

In this case, Dr. Perry treated Dennison on several occasions throughout the time of her alleged disability. At almost every appointment, Dennison denied experiencing depression, anxiety, memory loss, or mental disturbance. See, e.g., TR 701. In July 2008, Dr. Perry recommended that she receive an epidural injection to alleviate her increasing neck pain. (TR 783.) In January 2009, Dennison was advised that physical therapy may be helpful. (TR 779.) On June 2, 2009, Dr. Perry noted that Dennison's hip pain and back pain seemed to have deteriorated and advised that it would be helpful for Dennison to lose weight "but she is not likely to do so due to her joint pains and lack of compliance." (TR 704.) During her July 2, 2009 appointment, Dennison was alert and oriented, and denied depression and anxiety. (TR 705-06.) On October 13, 2009, Dennison complained of depression but not anxiety and appeared oriented. Dr. Perry noted that she complained of increasing lower back pain, but still cared for her three children and worked outside the home. He also assessed her as possessing mild depression and bipolar disorder. (TR 710-11.)

On November 13, 2009, Dr. Perry completed an RFC analysis in which he opined that Dennison could sit and stand for only two hours in a normal work day, needed to take several unscheduled 10-minute breaks during the day, could never twist, stoop, bend, or crouch, and was likely to be absent from work about four days per month as a result of her impairments. (TR 754-

56.) Dr. Perry also indicated that Dennison's experience of pain and other symptoms would interfere with her attention and concentration "frequently"; that is, from 34% to 66% of an 8-hour working day. Nevertheless, Dr. Perry indicated that she was capable of performing low stress jobs, given that she was "currently able to function in low stress [employment]." (TR 754.)

Dennison also asserts that the Law Judge should have given greater weight to the opinions of Dr. Lightner, who saw Dennison eight times. (TR 802.) In March 2008, Dr. Lightner found that her stream of thought was logical, relevant, coherent, and goal-directed, that she was oriented, and that her memory was "OK." Dr. Lightner assessed her with a GAF of 51.[1] (TR 565.) Through December 2008, Dennison's thought processes appeared logical, coherent, and linear. Dr. Lightner also noted that she was employed in a convenience store. (TR 559-60.)

After a break in service due to Dennison's loss of insurance coverage, Dr. Lightner completed a November 25, 2009[2] RFC assessment in which he indicated that he had last seen her in September 2009. Dr. Lightner noted that Dennison had possessed a GAF of 60 within the last year and that medication had helped her symptoms. (TR 802.) Nevertheless, Dr. Lightner opined that she was largely unable to maintain attention for two-hour periods, maintain regular attendance, work in coordination with others without being distracted, or understand and remember detailed instructions, citing Dennison's "[d]ifficulty [with] memory [and] concentration." (TR 804-05.) Dr. Lightner also assessed Dennison as having "marked"

---

[1] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A GAF score of between 51 and 60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 47 (4th ed. text rev. 2000).

[2] Although this assessment was submitted to the Law Judge after the date of the hearing, the Law Judge indicated that it would be considered in his decision as long as it was submitted prior to his written decision. (TR 41.)

difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (TR 806.) Dr. Lightner opined that Dennison's impairments would cause her to be absent from work about four days per month. (TR 807.)

As the Commissioner correctly observes, much of Dr. Perry's and Dr. Lightner's opinions contradicts the other substantial evidence in the record. Craig, 76 F.3d at 590. There is no dispute, for example, that Dennison was working back-to-back eight-hour days at the time that the relevant RFC assessments were completed. (TR 42-46, 50-52, 544, 593.) In contrast to Dennison's claims at the hearing before the Law Judge that a friend of hers voluntarily did the majority of the lifting required by this job,[3] Dennison described her duties on January 8, 2009 as involving "a lot of upper body movement" and requiring her to "stock[ ] shelves and wait[ ] on customers, fill[ ] coolers, and do[ ] a lot of lifting, pushing and pulling." (TR 770.) Yet Dr. Perry opined that Dennison's symptoms would interfere with her ability to work for up to two-thirds of an eight-hour work day, while Dr. Lightner asserted that Dennison couldn't maintain concentration for more than two hours at a time. Further, Dr. Perry's RFC indication that Dennison possesses severe difficulties with concentration and attention is not reflected in his treatment notes. The same failing befalls Dr. Lightner's similar findings regarding Dennison's attention span. For instance, Dr. Lightner indicated on his RFC assessment that Dennison had "marked" impairments—i.e., "more than moderate" limitations, see TR 806—with respect to her attention and concentration despite acknowledging that she recently possessed a GAF of 60,

---

[3] Of course, to the extent that Dennison claimed that her friend came into 7-Eleven every day to do all the lifting for her without being paid or being noticed by the premises owner, the Law Judge's determination to believe otherwise is a decision squarely within his prerogative and cannot be revisited by this court. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). The court notes that, in any event, Dennison still had to concentrate and stand on her own during each of the days that she worked.

which is indicative of only "moderate" symptoms.[4]

Other substantial evidence in the record also contradicts the RFC opinions rendered by Drs. Perry and Lightner. On March 26, 2008, for example, Dennison reported that she lived alone with her three children, woke daily at 6:00 a.m. to get her girls ready for school, performed housework for approximately two hours a week, washed dishes, and prepared food daily. (TR 199-206.) She also drives a car. (TR 544.)

With respect to her physical infirmities, a March 2008 MRI of the lumbar spine showed facet arthropathy and a disc protusion at L4-5 "which does not cause more than mild central canal or foraminal stenosis." (TR 796.) An MRI of the knee done at the same time showed minimal degenerative changes. (TR 797.) An April 2008 MRI of the cervical spine revealed mild degenerative spondylosis, with mild disc bulges and mild bilateral foraminal narrowing at C5-6 and C6-7. (TR 791.) After reviewing a follow-up cervical CT, Dr. Helm advised that surgery was likely unwarranted, preferring instead to pursue "aggressive conservative measures with physical therapy and epidural steroid injections." (TR 698.) Dr. Chirichetti similarly advised in October 2008 that she enroll in a physical therapy program to improve her range of motion. (TR 594.) In December 2008, however, Dennison advised her providers that she was "in no way interested in any type of cervical epidural steroid injection." She also discontinued her physical therapy on her own accord, prompting Dr. Chirichetti to note that "we are running out of options at this point." (TR 689.) When, on June 7, 2010, Dennison received a lumbar epidural steroid injection, she admitted that it eased her pain. (TR 822.)

Dennison's providers concur that her hip dysplasia would benefit from surgical

---

[4]See supra note 1.

intervention but will not attempt it, due to the increased surgical risks associated with her obesity. Given her failure to reduce her obesity through dietary or other measures, however, treating physicians have admitted that Dennison "is kind of at a standstill" in terms of remedying her ailment. (TR 821; TR 263, 704, 821, 837.)

The upshot of the evidence in this case, in other words, is that the activities demanded by Dennison's contemporaneous work and daily household tasks belie her treatment providers' assertions that her mental health impairments are disabling, and demonstrate that her physical ailments are either non-debilitating or potentially treatable. "Of course, a remediable impairment is not disabling." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983). It follows that the Law Judge did not reversibly err in according the RFC opinions of Dr. Lightner and Dr. Perry less than controlling weight. Craig, 76 F.3d at 590.

Given that it was within the Law Judge's discretion to discount the opinions of Drs. Perry and Lightner, the court can only conclude that substantial evidence supports the Law Judge's ultimate determination that Dennison is not entitled to benefits. First, the court cannot agree with Dennison's contention that the Law Judge erred reversibly in concluding that her mental infirmities do not meet the "B" criteria of the impairments listed in §§ 12.04 and 12.06.[5] See 20 C.F.R. §§ 404.1526 and 416.926. Sections 12.04 and 12.06 list affective disorders and anxiety related disorders, respectively, as impairments if certain symptoms are medically documented in conjunction with "at least two of the following":

1. Marked restriction of activities of daily living; or

---

[5]If a claimant suffers from a listed impairment, the claimant must be determined to be disabled, without consideration of such factors as age, education, and prior work experience. See 20 C.F.R. §§ 404.1520(d) and 416.920(d).

2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B).

A claimant bears the burden of proof to establish that she meets or equals a listed impairment. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Here, the medical record is clear that Dennison's mental impairments do not "satisf[y] all of the criteria" in §§ 12.04(B) and 12.06(B). See 20 C.F.R. §§ 404.1525(d), 416.925(d). A May 2008 psychiatric evaluation from a state agency physician determined that Dennison's impairments did not meet the listings in §§ 12.04(B) and 12.06(B). (TR 494, 496.) A second state agency physician made the same findings in January 2009. (TR 651, 654, 667-68.) Although Dr. Lightner's RFC assessment indicated that Dennison had marked limitations in several functional areas, the Law Judge had the discretion to discount his opinion based on the fact that she was actually working eight-hour days at the same time that he said that she was unable to do so. Accordingly, the court cannot conclude that Dennison has met her burden to show that her infirmities meet or equal a listed impairment. Pass, 65 F.3d at 1203.

Second, substantial evidence supported the Law Judge's determination that Dennison possesses the RFC to perform her past work as a retail cashier and to perform a limited range of light work. The Law Judge rested his conclusion not only on the objective medical record, but also on the assessments of the consultative physician and several state agency physicians that were rendered in this case. It is well-settled that, where "the medical expert testimony from

10

examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand." Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986). By the same token, it was not reversible error for the Law Judge to rely upon the opinions of the state agency and consultative physicians in light of the inconsistencies between the medical record and the RFC assessments of Drs. Perry and Lightner. Mastro, 270 F.3d at 178. See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("[I]t is the responsibility of the Secretary and not the courts to reconcile inconsistencies in the medical evidence, and . . . it is the claimant who bears the risk of nonpersuasion.").

For example, in May 2008, Dr. Amos, a state agency physician, completed a physical RFC analysis. After reviewing her medical records, he determined that Dennison could occasionally lift or carry twenty pounds, could stand or sit for at least six hours in a typical work day, and could occasionally climb, balance, stoop, kneel, crouch, or crawl. (TR 504-06.) Dennison's records were reviewed again by state agency physicians in November 2008. After reviewing the MRIs and records reflecting Dennison's increased complaints of back pain and migraines, and taking into account Dennison's contemporaneous work and daily activities, Dr. Vinh assessed her physical RFC in terms that largely mirrored those reached by Dr. Amos. (TR 601-607.)

In January 2009, Dr. Leen conducted a consultative examination with Dennison with respect to her mental health infirmities. Dr. Leen found her to be grossly oriented and noted that her "thought processes appear concrete, not grossly illogical and mildly distractible or tangential." (TR 646.) Finding that she appeared depressed and irritable, Dr. Leen also observed that she could give only vague accounts of panic attacks and of the discomfort she felt in

11

crowded situations. (TR 646.) Dr. Leen opined that Dennison suffers from mood disorder, anxiety disorder with social phobia, and post-traumatic stress disorder with panic features. He assessed her as possessing a GAF of 53 at the time of examination. (TR 647.) Based on his examination, Dr. Leen tendered the following functional assessment:

> Secondary to the claimant's dysphoria, diminished energy, anxious discomfort in social situations and panic attacks, she is currently unable to consistently perform complex or challenging work activities with or without additional supervision. From the standpoint exclusively of her psychological functioning and psychiatric symptoms, without regard for her physical/medical conditions, she is currently able to consistently perform relatively simple and repetitive work activities in a timely and appropriate manner. She is able to maintain reliable attendance in a workplace at this time. She is able to accept instructions from supervisors and deal appropriately with coworkers and the public on a consistent basis. She is able to complete a normal workweek without interruptions resulting from her mood disorder and anxiety symptoms. She is currently generally able to deal with the usual stressors of competitive work.

(TR 648.) On January 29, 2009, a third state agency physician similarly determined that Dennison's mental RFC allowed her to perform simple, routine work activity. (TR 668.)

Moreover, there is no dispute that Dennison worked at the level of substantial gainful employment between January 1, 2008—the alleged onset of her disability—and December 31, 2008. She continued to work—though at a somewhat reduced earning level—as a cashier at 7-Eleven through the date of the hearing before the Law Judge, in which position she typically worked six hours on Friday, eight hours on Saturday, and eight hours on Sunday. (TR 46.) Although the record indicates that Dennison's discomfort may have increased toward the latter part of this time, Dennison does not contend that her condition "significant[ly]" deteriorated beyond its state during the time at which she worked at the substantial gainful level. See Craig, 76 F.3d at 596 n. 7. Thus, inasmuch as her impairments afflicted her, prior to September 30,

12

2010, "to virtually the same extent" as they did during the time she was still working, she cannot be deemed disabled. Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1970).

The court has carefully reviewed the evidence submitted after the Law Judge's decision, but has determined that none of it is inconsistent with the Law Judge's ultimate denial of benefits to Dennison. The February 26, 2010 medical evaluation provided by Dr. Perry, for example, is simply too conclusory to sustain plaintiff's burden of proof at step four. (TR 810-11.) See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987) (claimant bears burden of proof until step five of the sequential analysis). While Dennison's complaints of fibromyalgic pain appear to have increased over time, she reported in January 2010 that her symptoms had been present for the past year. (TR 840.) She denied depression and anxiety in February 2010 (TR 852), was alert and oriented in April 2010 (TR 860), and was deemed logical and coherent during a psychiatric visit in June 2010. (TR 863.) It was noted in June 2010 that she was still driving. (TR 851.) Dennison also noted in June 2010 that a lumbar epidural steroid injection gave some relief to her physical pain. (TR 821-22),

In determining Dennison's RFC, the Law Judge essentially incorporated Dr. Leen's mental RFC assessment as his own and adopted the physical RFC assessments suggested by the state agency physicians. (TR 16.) In response to the Law Judge's primary hypothetical, the VE advised that the resulting RFC would allow for employment as a cashier. (TR 26.) Accordingly, given the evidence of Dennison's daily activities, her contemporaneous work duties, the medical record, and the RFC assessments offered by the consultative physician and the state agency physicians in this case, the court can only conclude that the Law Judge's determination that Dennison possesses the ability to return to her past relevant work as a cashier or to perform a

limited range of light work is supported by substantial evidence. Hays, 907 F.2d at 1456.

For the reasons stated, the court believes that the Commissioner's denial of plaintiff's claim for disability insurance benefits is supported by substantial evidence. It follows that the Commissioner's final decision in this case must be affirmed. In affirming the Commissioner's final decision, the court does not suggest that Dennison is free of all pain, discomfort, and weakness. Indeed, the medical record confirms that she has suffered pain and discomfort over a protracted period of time. Nevertheless, it must be recognized that the inability to do work without any subjective discomfort does not of itself render a claimant totally disabled. Craig, 76 F.3d at 594-95. As has been noted, it appears to the court that the Administrative Law Judge considered all of the subjective factors reasonably supported by the medical record in adjudicating plaintiff's claims for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner even if the court might resolve the conflicts differently. Richardson, 402 U.S. at 400; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws, 368 F.2d at 642. An appropriate judgment and order will be entered this day.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER: This ___1st___ day of July, 2011.

_Jsum Conrad_
_____
CHIEF UNITED STATES DISTRICT JUDGE